**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**RICHARD BLAISDELL,**

Plaintiff,

v.

**RICHARD TANNER, M.D.,**

Defendant.

Civil No. 00-1318 (JRT/JGL)

**REPORT AND RECOMMENDATION**

Richard Blaisdell, pro se.

Bruce P. Candlin, Esq., on behalf of Defendant.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Defendant's Motion for Summary Judgment (Doc. No. 26). Plaintiff, a prisoner of the State of Minnesota, has filed this lawsuit based on an alleged violation of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff has been granted permission to proceed in forma pauperis in this matter. This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

FILED JUN 14 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Plaintiff Blaisdell was originally incarcerated in Hawaii on August 30, 1990. In July 1998, Plaintiff was moved to a facility in Tennessee, where he remained until December 1998. While incarcerated in Hawaii and Tennessee, Plaintiff received the drug ANSAID, a brand name for the generic drug flurbiprofen, to help treat Plaintiff's osteoarthritis in both knee joints. The ANSAID effectively alleviated Plaintiff's symptoms during that time.

In January 1999, Plaintiff was transferred to the Prairie Correctional Facility ("PCF") in Appleton, Minnesota. Upon arrival at PCF, Plaintiff's requests to continue receiving ANSAID were denied and Plaintiff was prescribed Naprosyn instead. Defendant, who was in charge of overseeing the medication formulary distributed to inmates at PCF, claims the decision was made because ANSAID is not on the formulary list at PCF. According to Defendant, the only important difference between the two drugs is that Naprosyn has a longer proven safety record than ANSAID.

Plaintiff contends that Naprosyn failed to alleviate his symptoms. While not receiving ANSAID, Plaintiff complained of constant pain and stiffness, difficulty walking short distances without extreme pain and discomfort, and of the inability to go to recreation and exercise. Plaintiff pursued all available grievance procedures in attempting to have the prescription for ANSAID filled.

Defendant left his employment at PCF in April 2000. The PCF's medical unit attempted again to have Plaintiff's ANSAID prescription filled, but those requests were denied. In the fall of 2000,[1] the new doctor overseeing the prison formulary approved the ANSAID prescription through March 19, 2001. On March 2, 2001, Plaintiff was transferred to the Florence Correctional Facility ("FCF") in Florence, Arizona.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is "material" if it must ultimately be resolved and if its resolution will determine the outcome of the case. See id. Materiality is determined by examining the substantive law of the claims. See id.

---

[1] The parties dispute when Plaintiff actually began receiving ANSAID at PCF. Defendant claims it was in August 2000 while Plaintiff says he did not receive the medication until October 2000.

The non-moving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party may not rely on only mere allegations or denials. See id.; Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999) (citations omitted). However, the facts are examined in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 255. Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In the present case, there are no genuine issues of material fact and the Court must view the facts in the light most favorable to Plaintiff Blaisdell. Plaintiff has pleaded sufficient facts and provided adequate evidence to make out a prima facie case for an Eighth Amendment violation.

**B. Plaintiff's Eighth Amendment Claim Under § 1983**

Title 42 U.S.C. § 1983 provides relief to an inmate when a prison official deprives him of rights guaranteed by the Constitution or other federal law. Thus, a § 1983 complaint must allege a particular

violation of federal law. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 817 n.4 (1985). Section 1983 itself is not a source of substantive rights, but is a means of vindicating federal rights guaranteed elsewhere. See Albright v. Oliver, 510 U.S. 266, 271 (1994) (plurality opinion) (citation omitted).

In the present case, Plaintiff Blaisdell explicitly raises an Eighth Amendment claim. Prison officials violate the Eighth Amendment of the United States Constitution if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed. See Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995) (citing Estelle, 429 U.S. at 104-05).

This standard has both an objective and subjective component; the plaintiff must demonstrate both that he suffered from an objectively serious medical need and that prison officials actually knew about but deliberately disregarded his need. See Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). The plaintiff "must show more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Medical malpractice is also insufficient to constitute a constitutional violation. See Dulany, 132 F.3d at 1239 (citing Estelle, 429 U.S. at 104-106). Because Plaintiff Blaisdell

alleges that Defendant was deliberately indifferent to a serious medical need when Plaintiff was denied the prescription medication ANSAID that was prescribed by his treating physicians, the Court will analyze his § 1983 claim and Defendant's motion in the context of the Eighth Amendment.

### 1. Objective Component

A prisoner claiming inadequate medical care meets the objective component when the prisoner proves that his medical need is serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). Deprivation of serious medical needs is adverse to contemporary standards of decency. See id.

The Eighth Circuit in Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991), declared that a serious medical need is one that has been diagnosed by a doctor as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention. See id. Not every refusal of medical treatment constitutes cruel and unusual punishment in breach of the Eighth Amendment. Medical need covers a vast spectrum from immediate intervention to save the patient's life to the desire for medical treatment of trivial discomforts that most people would ignore. See Ralston v. McGovern, 167 F.3d 1160, 1161-62 (7th Cir. 1999).

A determination about which need causes such a violation is a judgment "that does not lend itself to a mechanical resolution." Id.

Rather, in the words of the Seventh Circuit, it is a matter of determining the civilized minimum of public concern for the health of prisoners, and depends on the particular circumstances of the individual prisoner. See id. Following the Seventh Circuit's reasoning, "a civilized minimum is a function of both objective need and of cost. The lower the cost, the less the need has to be shown, but the need must still be shown to be substantial." Id. (holding the refusal to treat, at trivial cost, the pain by cancer was "barbarous").

Plaintiff Blaisdell's pain may not be synonymous with the pain associated with cancer, but the pain experienced by Plaintiff due to his osteoarthritis contributes to his inability to exercise and further exacerbates his dire need to lose weight and reduce the strain placed on his knees. Plaintiff is not demanding a costly medication or an addictive drug. He is merely seeking the dispensing of the pain medication ANSAID, which has been prescribed by four different doctors from as many different prison systems. (Compl. ¶¶ 5-7; Exs. A & B.) Plaintiff received ANSAID while incarcerated in Hawaii, Tennessee, and Kentucky. (Compl. ¶¶ 5, 6; Ex. C at Letter from Blaisdell to Sakai of 01/21/00 and Letter from Blaisdell to Office of The Ombudsmen of 12/04/99.) Even though ANSAID was not on the prison formulary in Tennessee, Plaintiff was granted his request to be prescribed ANSAID after establishing his compelling need. (Compl. at Ex. C at Letter from Blaisdell to Sakai of 01/21/00 and Letter from Blaisdell to Davidson of 10/20/99.)

Defendant confirmed from documents sent to him that Plaintiff's morbidly obese physical condition is a significant risk factor for the osteoarthritis in his knees. (Letter from Tanner to the Court of 9/07/2000.) Defendant suggested that Plaintiff needs to get down to an ideal body weight if his knees are to improve and that losing weight is the most important thing that Plaintiff can do for his osteoarthritis. (Id.) Defendant cites the dangers of Plaintiff's weight in relation to his arthritic condition but ignores Plaintiff's overall health concerns attributed to being grossly overweight.

Plaintiff has two conditions which appear to be interrelated, his obesity and his osteoarthritis; administration of ANSAID would assist him in managing both problems. ANSAID has worked in the past to lessen Plaintiff's pain associated with his osteoarthritis and allowed him greater mobility. As his mobility decreases so does his ability to work at reducing his weight. The Court finds that Plaintiff has met the objective standard establishing that he has a serious medical need. See Hudson, 508 U.S. at 9.

**2. Subjective Component**

The subjective component of deliberate indifference looks to whether a prison official acted with the requisite intent to be considered as acting with a deliberate indifference to a prisoner's medical needs. See Johnson, 953 F.3d at 351. Such culpability can be established by showing the prison official either deliberately deprived a prisoner of

adequate medical care or acted recklessly in response to a serious medical need. See Brewer v. Blackwell, 836 F. Supp. 631, 639 (D. Iowa. 1993) (citing Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984); Branchcomb v. Brewer, 669 F.2d 1297, 1298 (8th Cir. 1982); Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984)); see also Estelle, 429 U.S. at 105-06.

While Defendant's deliberate indifference may be shown by his attitude and conduct in responding to a prisoner's serious medical need, Plaintiff is required to prove deliberate indifference either by actual intent or by reckless disregard. See Helling v. McKinney, 509 U.S. 25, 29-30 (1983); Estelle, 429 U.S. at 104-05; DeGidio v. Pung, 704 F. Supp. 922, 955 (D. Minn. 1989); Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985).

Reckless disregard of a serious medical need occurs if the prison official disregards a substantial risk of danger that is known or would be apparent to a reasonable person in the prison official's position. See Buckner v. Hollins, 983 F.2d 119, 122 (8th Cir. 1993). Here, Defendant knew of the ongoing risk to Plaintiff, that the condition of his knees would continue to worsen if his weight remained unchanged. He knew that Plaintiff had tried numerous other drugs which the prison formulary allowed, and also knew none of the other medications gave Plaintiff the same relief as the ANSAID. (Compl. ¶¶ 13-16; Letter from

Tanner to the Court of 9/07/2000.) Plaintiff exhausted all administrative remedies in his effort to obtain the prescribed medication.

Defendant contends that the drug Naprosyn® (Naproxen)[2] "should do fine" and continued to refuse to grant Plaintiff's request. (Compl. Ex. C at Formulary Exception Request submitted 7/27/99.) Plaintiff was informed that the dispute was merely a difference of medical opinion and did not rise to the level of deliberate indifference. (Compl. Ex. C at Offender Grievance Form submitted 11/15/99.) Defendant contends that Plaintiff needs a non-steroidal anti-inflammatory drug (NSAID) for his osteoarthritis and that any formulary NSAID would do as well as ANSAID. (Letter from Tanner to the Court of 9/07/2000.)

The decision appears to be academic on the surface, but Plaintiff has been seen by at least four different doctors who have each prescribed ANSAID for his condition. Defendant has never seen Plaintiff and contends that all NSAIDs are the same. If all medications were the same, it hardly seems likely that there would be so many variations available. Furthermore, Plaintiff avers that only ANSAID provides sufficient relief, and the Court finds Plaintiff credible. Defendant's disregard for the specific facts surrounding Plaintiff's condition results in an indifferent and deliberate disregard of Plaintiff's serious medical need. Therefore, the Court declines to recommend granting Defendant's motion for summary judgment.

---

[2]Naproxen is the generic form of Naprosyn®.

**C. Medical Malpractice**

Defendant argues that Plaintiff has asserted a medical malpractice claim against him. Defendant further argues that this claim cannot stand based on Minn. Stat. § 145.682, which establishes mandatory procedures in an action against a health care provider that alleges "malpractice, error, mistake or failure to cure." Minn. Stat. § 145.682, subd. 2.

Dr. Tanner's reliance on § 145.682 is misplaced. First, the Court finds no medical malpractice claim in the Complaint. In fact, Plaintiff specifically denies having brought such a claim. (Pl.'s Reply Def.'s Summ. J. Mot. at 2.) Second, in Anderson v. United States, No. Civ. 5-96-235, 1998 WL 92460 (D. Minn. Jan. 5, 1998), which was a medical malpractice action based on the Federal Tort Claims Act ("FTCA"), the court explicitly recognized that "claims brought pursuant to the FTCA are governed by State substantive law" before it applied § 145.682. Id. at *3. However, Plaintiff Blaisdell's § 1983 case involves exclusively federal law and implicates no state substantive law. Moreover, Plaintiff's case is not founded on medical malpractice, which is a state law issue and therefore not appropriate for a § 1983 claim, but on

the Eighth Amendment. Thus, the Court finds § 145.682 inapplicable and declines to recommend dismissal of the Complaint on this basis.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. No. 26) be **DENIED.**

Dated: June 14, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by July 2, 2001, written objections which specifically identify the portions of this Report to which objection is being made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.