**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RICHARD BLAISDELL,

Plaintiff,

v.

RICHARD TANNER,

Defendant.

Civil No. 00-1318 (JRT/JGL)

**ORDER REJECTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE DATED JUNE 14, 2001**

---

Richard Blaisdell, #A0200813, Florence Correctional Center, Box 6900, Florence, AZ 85232, plaintiff *pro se*.

Bruce P. Candlin, CANDLIN & HECK, 3800 West 80th Street, Suite 1500, Bloomington, MN 55431, for defendant.

Plaintiff Richard Blaisdell ("Blaisdell") has sued the defendant, Dr. Richard Tanner ("Tanner") under 42 U.S.C. § 1983, alleging a violation of his civil rights. On March 14, 2001, Tanner moved for summary judgment. This matter is now before the Court on Tanner's objections to the Report and Recommendation of Magistrate Judge dated June 14, 2001, which recommended denying Tanner's motion. The Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court rejects the Report and

FILED 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. MAR 2002
DEPUTY CLERK

Recommendation of the Magistrate Judge and grants Tanner's motion for summary judgment.

## BACKGROUND

Between January 1999 and March 2001, Blaisdell was incarcerated by the State of Minnesota at Prairie Correctional Facility ("PCF") in Appleton, Minnesota. Prior to that, he was incarcerated in Hawaii and Tennessee. After leaving PCF in March 2001, Blaisdell was moved to his present location in Arizona. Blaisdell suffers from obesity and from osteoarthritis in both of his knees. While incarcerated in Hawaii and Tennessee, Blaisdell received the drug Ansaid to treat the osteoarthritis. Ansaid is one of a class of drugs known as non-steroidal anti-inflammatory drugs ("NSAIDs"). Blaisdell asserts that Ansaid effectively controlled his pain.

Upon being transferred to PCF in 1999, examining physicians apparently prescribed Ansaid even though it was not included in the PCF formulary. Tanner was in charge of overseeing the medication distributed to inmates at PCF. He denied the requests for Ansaid, asserting that another NSAID, Naprosyn, is equally effective and should work for Blaisdell's condition. Naprosyn was in PCF's formulary. Tanner claims that the only significant difference between Naprosyn and Ansaid is that Naprosyn has a longer proven safety record.

Blaisdell objected to this refusal, and exhausted the grievance procedures available to him. Blaisdell contends that Naprosyn did not alleviate his symptoms, and that when not taking Ansaid he suffered constant pain and stiffness, and had difficulty walking.

Blaisdell claims that this pain made it impossible for him to exercise, thus exacerbating his obesity.

Tanner left his job at PCF in April 2000. Sometime in the summer or fall of 2000, the new doctor overseeing the PCF formulary approved Blaisdell's prescription for Ansaid.

## ANALYSIS

Tanner now objects to the Magistrate Judge's finding that he showed "an indifferent and deliberate disregard of Plaintiff's serious medical need." (Rep. & Rec. at 10.) Tanner argues that his decision to adhere to the prison's formulary was dictated by his medical judgment, and does not rise to the level of a constitutional violation.

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir. 1981).

## II. Tanner's Objections to Report and Recommendation

Tanner argues that this lawsuit stems from a disagreement over the proper course of medical treatment, and not, as Blaisdell claims, from deliberate indifference to Blaisdell's medical condition. Tanner argues that he attempted to treat Blaisdell's pain, and that the medical evidence supports his contention that treatment with Naprosyn was appropriate.

It is well-established that deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This may include "intentionally denying access to medical care, or intentionally interfering with treatment or medication that has

been prescribed." *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). To successfully make such a claim, Blaisdell must demonstrate that: (1) he suffered an objectively serious medical need; and (2) that Tanner actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Tanner would be acting with deliberate indifference if he recklessly disregarded a substantial risk of harm to Blaisdell. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998).

In the present case, Tanner concedes that Blaisdell's medical need is an objectively serious one. Tanner argues that he made a good-faith effort to treat Blaisdell, and that Blaisdell has produced no evidence to support his allegations of deliberate indifference. The Court agrees, and finds that this case is a "classic example of a matter for medical judgment that does not rise to the level of cruel and unusual punishment." *Long v. Nix*, 86 F.3d 761, 766 (8th Cir. 1996) (quoting *Gamble*, 429 U.S. at 107) (quotation marks omitted).

This case is similar to *Long*, in which the plaintiff, a prisoner, sued prison officials under § 1983, claiming he was denied medical treatment for psychological disorders. At trial, plaintiff's physician testified that he should have been prescribed tranquilizers. *Id.* at 764. Prison officials refused to prescribe tranquilizers "in spite of" the recommendation by plaintiff's doctor. *Id.* The Court held that even though the prison's medical staff knew of the plaintiff's "psychological problems," their refusal to prescribe tranquilizers did not show any deliberate indifference. *Id.* at 765 The Court noted that the prison medical staff had attempted to treat plaintiff, and that their failure to provide

tranquilizers was "merely a dispute over the course of treatment" that did not rise to a constitutional violation. *Id.* at 765-66. *See also Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (holding prison's attempts to allay prisoner's pain are evidence that prison officials were not deliberately indifferent to prisoner's medical needs).

The facts of the present case are clear and undisputed. Blaisdell had been receiving Ansaid and wished to continue receiving it at PCF. Ansaid was not in PCF's formulary. Tanner felt that Naprosyn would be equally effective, and declined to grant a non-formulary exception for Ansaid. The only real question is whether Naprosyn is ineffective against Blaisdell's pain. If the answer is yes, as Blaisdell claims, and Tanner knew the drug was ineffective, Blaisdell has the makings of a deliberate indifference claim. However, Blaisdell has offered no evidence to support such a conclusion.

The Magistrate Judge stated that Tanner "knew of the ongoing risk" to Blaisdell, and "also knew none of the other medications gave [him] the same relief" as Ansaid. (Rep. & Rec. at 9.) This characterization, however, is at odds with the record. The Magistrate Judge cites no evidence that Tanner knew Naprosyn would be ineffective, or that it would cause Blaisdell any additional or unnecessary pain. On the contrary, the record shows that Tanner believed Naprosyn would be effective. In a letter filed with the Clerk [Docket No. 9], Tanner states that "any formulary NSAID would do as well as Ansaid" in controlling Blaisdell's pain. (Tanner Ltr. at 2.) Moreover, to the extent that Tanner knew Blaisdell's condition was "worsening," it is clear that Tanner felt this could not be due to any change in NSAID medication, and was likely caused by Tanner's

obesity.[1] (Tanner Ltr. at 2.) Thus, the Magistrate Judge's factual conclusions do not support a finding of deliberate indifference.

After discussing the facts, the Magistrate Judge summarized his reasoning in the following paragraph:

> The decision [to prescribe Ansaid or Naprosyn] appears to be academic on the surface, but Plaintiff had been seen by at least four different doctors who have each prescribed ANSAID for his condition. Tanner has never seen Plaintiff and contends that all NSAIDs are the same. If all medications were the same, it hardly seems likely that there would be so many variations available. Furthermore, Plaintiff avers that only ANSAID provides sufficient relief, and the Court finds Plaintiff credible. Defendant's disregard for the specific facts surrounding Plaintiff's condition results in an indifferent and deliberate disregard of Plaintiff's serious medical need.

(Rep. & Rec. at 10).

This analysis has two flaws. First, the Magistrate Judge mischaracterizes Tanner's view about the two medications. The record demonstrates that Tanner does not claim that "all NSAIDs are the same." Tanner opined that Ansaid and Naprosyn are **equally effective** against osteoarthritis, not that they are equal in every respect. In fact, Tanner noted several differences between NSAIDs, stating that research has "found differences in toxicity related to increased doses and to the nature of the NSAID itself." (Tanner Ltr. at 1.) He also noted that Naprosyn has a longer proven safety record than Ansaid. (*Id.*) Furthermore, Tanner presented medical evidence demonstrating differences between the

[1] Tanner noted that his medical opinion is based upon research that shows NSAIDs do not affect the progress of diseases like Blaisdell's osteoarthritis.

two medications,[2] and showing that Naprosyn is used frequently by private health care systems. (Tanner Ltr. Photocopies 1-4, 6-7.) Thus, to the extent that the Magistrate Judge's findings rely on Tanner's purported belief that "all NSAIDs are the same," the record undermines these findings.

Second, and more important, the Magistrate Judge improperly relied on Blaisdell's "credibility" in making his decision. Blaisdell is the non-moving party, and for purposes of this motion the Court must presume his allegations to be true. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). Nevertheless, Blaisdell may not rest merely upon his allegations to defeat summary judgment; he must set forth specific facts to raise a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Blaisdell, however, has produced no such evidence.

Blaisdell claims that Ansaid relieves his pain but Naprosyn does not. He further alleges that Tanner knew of his pain and deliberately ignored it. The Magistrate Judge found that Blaisdell established a genuine issue of material fact on these matters, but cites nothing more than Blaisdell's allegations in the complaint. For example, the Magistrate Judge notes that four doctors prescribed Ansaid to Blaisdell at various times, but the record contains no information about this other than notations of the prescriptions themselves. There are no treatment notes or other evidence that might give a medical

[2] One such difference is that Ansaid is not recommended for use by children, while Naprosyn is permitted for some children. Blaisdell argues that Naprosyn is "made for juveniles." (Plaintiff's Reply to Obj. to Rep. & Rec. at 3.) The attachments to Dr. Tanner's letter clearly show that this is incorrect. Even though Naprosyn is permitted for children, the record shows that it is also recommended for adults. No evidence in the record suggests that Naprosyn is exclusively for non-adults. (*See* Tanner Ltr. Photocopy 2.)

reason why Blaisdell must receive Ansaid. Rule 56(e) requires a plaintiff like Blaisdell "to go beyond the pleadings and [to] . . . designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted); Fed. R. Civ. P. 56(e). Although Blaisdell's submission may technically go beyond the pleadings, the materials he submitted merely re-state his allegations; they provide no factual support for his material claim – namely, that Tanner knew of and deliberately ignored his suffering.

> The failure to treat a medical condition does not constitute punishment [under] the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. . . . As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.

*Dulany*, 132 F.3d at 1239 (citation and quotation omitted). Blaisdell has not demonstrated that Tanner knew his failure to prescribe Ansaid created an excessive risk. All the evidence in fact suggests that Tanner acted upon his independent medical judgment, and believed Naprosyn would control Blaisdell's pain as effectively as any NSAID could.

The Magistrate Judge's analysis seems to hinge on the fact that plaintiff's allegations were "credible." (Rep. & Rec. at 10.) However, Blaisdell must do more than appear credible to defeat summary judgment. He must raise some facts or evidence to support his contention. He has raised none. Therefore, the Court concludes that Tanner's motion for summary judgment must be granted.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **SUSTAINS** defendant's objections [Docket No. 36] and **REJECTS** the Magistrate Judge's Report and Recommendation [Docket No. 34]. Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 26] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2002
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.